UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ERIC DEVAL LEWIS                                              CIVIL ACTION

VERSUS                                                        NUMBER: 19-2423

COLONEL MIKE TODD, ET AL.                                     SECTION: "F"(5)

**REPORT AND RECOMMENDATION**

Before the Court is the motion to dismiss of the nine named Defendants herein, Colonel Mike Todd, Lieutenant Colonel Kevin Luper, Lieutenant Jason Smith, CSM Waldo Jones, CSM Brian Nichols, Sergeant Lloyd Spears, Deputy Warden Keith Bickham, Warden Robert Tanner, and Secretary James LeBlanc. (Rec. doc. 15). Plaintiff has filed no memorandum in opposition to Defendants' motion.[1] For the reasons that follow, it is recommended that Defendants' motion be granted and that Plaintiff's suit be dismissed.

Plaintiff is an inmate of the B.B. "Sixty" Rayburn Correctional Center ("RCC") in Angie, Louisiana, who is serving a 40-year sentence for first-degree robbery following his conviction by a jury in the Orleans Parish Criminal District Court.[2] Plaintiff's complaint in the instant matter concerns two separate but related incidents at RCC that will be addressed in chronological order. First, Plaintiff alleges that on July 10, 2018, he ordered a media device called a JP-5 Player from an outside vendor approved by the Louisiana Department of

---

[1] As Plaintiff has filed no memorandum in response to Defendants' motion, timely or otherwise, the Court may properly assume that he has no opposition to it. *Johnson v. Colvin*, No. 14-CV-0401, 2014 WL 4186790 at *1 n. 1 (E.D. La. Aug. 22, 2014)(citing Local Rule 7.5 and *Bean v. Barnhart*, 473 F.Supp. 2d 739, 741 (E.D. Tex. 2007)); *Jones v. Larpenter*, No. 13-CV-0056, 2013 WL 1947243 at *1 n. 1 (E.D. La. Apr. 12, 2013), *adopted*, 2013 WL 1947188 (E.D. La. May 10, 2013)(same); *Lucas v. Crowe*, No. 11-CV-2752, 2013 WL 870514 at *1 n. 1 (E.D. La. Feb. 15, 2013), *adopted*, 2013 WL 870437 (E.D. La. Mar. 7, 2013)(same). Of course, a motion like the Defendants', even if unopposed, may be granted as long as it has merit. *Braly v. Trail*, 254 F.3d 1082, 2001 WL 564155 at *2 (5th Cir. 2001).

[2] Information pertaining to Lewis' conviction was obtained from the record of a 28 U.S.C. §2254 habeas proceeding that he is presently litigating here, *Lewis v. Tanner*, No. 19-CV-0588 "F"(4).

Corrections for $80.00. Unbeknownst to Plaintiff, the JP-5 Player allegedly arrived at RCC on July 23, 2018 but was not given to him at that time as he was then assigned to Level 1 Extended Lockdown, as will be discussed more fully *infra*, where such devices are not permitted as an incident of administrative segregation. On October 24, 2018, Plaintiff states that he was transferred to a less restrictive housing unit where such devices are typically allowed. Plaintiff subsequently corresponded with Deputy Warden Bickham, who forwarded that correspondence to Colonel Todd, who later advised Plaintiff that he would not be allowed to possess the device because he had been housed in administrative segregation when the device was received at RCC. Plaintiff was therefore asked to provide an outside address that the JP-5 Player could be forwarded to, absent which the device would be destroyed. On February 25, 2019, Plaintiff states that he confronted Bickham while the latter was making rounds and that Bickham stated that the withholding of the device was a form of punishment and that Plaintiff would be well advised to curb his litigiousness if he valued the privileges that are available to inmates at RCC. Plaintiff states that he initiated an Administrative Remedy Procedure ("ARP") grievance with respect to this occurrence and that grievance was pending at the time that he authored his complaint. Plaintiff alleges that this occurrence is but one instance in a pattern of mistreatment, unfounded write-ups, and adverse actions to which he has been subjected since November 4, 2016 along with limitations on canteen access and his ability to purchase hygienic necessities like deodorant.

In the second incident complained of by Lewis, he alleges that on July 18, 2018, he was "written up" for aggravated fighting for simply wrapping his arm in a towel to prevent being bitten or scratched by another inmate, whereupon all of his personal property was impounded by Lieutenant Johnson as a prelude to being placed in administrative

segregation. Plaintiff states that he was found guilty of the prison rule violation by Colonel Luper on July 20, 2018 and was sentenced to 90 days in Level 1 Extended Lockdown. There, he was provided only one towel, two sheets, and a blanket and had no access to his personal property which included prescription eyeglasses, a knee brace, and various legal materials, the same being stored and sealed in boxes. Plaintiff states that he "profusely" asked a number of RCC officials about access to his personal property, to no avail. Correspondence sent to Warden Tanner and Deputy Warden Bickham was equally unavailing.

The weekend before he was to be afforded an opportunity to inventory his personal property, Plaintiff states that he spotted the boxes containing his property in a storage closet with the seals on them having been broken. Lewis indicates that CSM Nichols ordered him out of his cell on August 11, 2018 to inventory his property which he initially refused to do. However, under the threat of being sprayed with a chemical agent, an unidentified major and Lieutenant Smith restrained and escorted Lewis to the lobby where the boxes containing his personal property were located by Sergeant Spears. Despite his protestations, Plaintiff alleges that Sergeants Spears, Nichols, and Jones proceeded to recklessly rummage through his property while murmuring expletives and homosexual monikers. Plaintiff was then led back to his cell without any of his property, reportedly being told that if he refused to sign for it, he would not receive it. Lewis states that his property was scattered about in a random fashion, some being in plastic bags, and he was told that it would be sent to the mail room. Plaintiff states that he then filed an ARP grievance in an attempt to obtain redress. That grievance was responded to by Lieutenant Luper, who "forged" a response despite video camera footage to the contrary. Lieutenant Luper also allegedly relied upon a statement from Lieutenant Smith that only Plaintiff's "unauthorized" property had been sent to the

3

mailroom, notwithstanding the fact that his "authorized" property (*i.e.*, eyeglasses, knee brace, legal materials, and books) remains unaccounted for. At the second step of the grievance process, Plaintiff indicates that Secretary LeBlanc similarly denied him relief. Plaintiff states that he also corresponded with Warden Tanner and Deputy Warden Bickham in an attempt to access his authorized property and to be afforded a property inventory. He claims there was no response to that correspondence, which he says was referred to Colonel Todd, who has a penchant for retaliating against him based on his past litigation history.

Continuing, Lewis alleges that on five separate occasions, unidentified members of the security staff approached him and demanded an address to which his unauthorized property could be mailed at his expense. Then, on October 2, 2018, Colonel Todd and Lieutenant Mingo, equipped with a body camera, again asked Lewis for a mailing address under the threat of destruction of his property. That same day during mail call, Plaintiff states that he received a letter from Deputy Warden Bickham and Colonel Todd advising that his property would be destroyed the following day. Plaintiff indicates the property was, in fact, destroyed. For all of the foregoing, Lewis seeks compensatory and punitive damages as well as declaratory and injunctive relief.

The Defendants now move for the dismissal of Plaintiff's complaint under 28 U.S.C. §1915(e), 42 U.S.C. §1997e(c)(1), and Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure, advancing various arguments in support thereof. First, the Defendants argue that Plaintiff's §1983 claims against them in their official capacity are barred by the Eleventh Amendment. Defendants' argument is well-founded as it is axiomatic that the Eleventh Amendment bars citizens' suits in federal court against states, their political subdivisions, and state officials acting in their official capacity. *Champagne v. Jefferson Parish Sheriff's*

4

*Office*, 188 F.3d 312, 313-14 (5th Cir. 1999)(citing *Voisin's Oyster House v. Guidry*, 799 F.2d 183, 185 (5th Cir. 1986)).3/ Because sovereign immunity deprives a court of jurisdiction, the claims so barred are appropriately dismissed without prejudice. *Warnock v. Pecos County, Texas*, 88 F.3d 341, 343 (5th Cir. 1996); *Kervin v. City of New Orleans*, No. 06-CV-3231, 2006 WL 2849861 at *2-4 (E.D. La. Sept. 28, 2006). In light of these authorities, it will be recommended that Plaintiff's §1983 claims against the nine named Defendants in their official capacity be dismissed without prejudice for want of jurisdiction.

Turning to Plaintiff's §1983 claims against the Defendants in their individual capacity, the first of the two incidents complained of involved Plaintiff's ordering of an electronic device that was not given to him because it arrived at RCC on a date when he was in administrative segregation, a customary practice for inmates there who are so confined.4/ *See*, e.g., *Tauzier v. LeBlanc*, No. 09-CV-4471, 2010 WL 1731200 at *2 (E.D. La. Apr. 15, 2010), *adopted*, 2010 WL 1731176 (E.D. La. Apr. 28, 2010). In that regard, inmates like Lewis have no constitutional right to visitation privileges, access to the jail commissary, radio and television use, and the like. *Id.* (citing *Scheanette v. Dretke*, 199 Fed.Appx. 336, 337 (5th Cir. 2006); *Gonzalez v. Johnson*, 48 Fed.Appx. 103, 2002 WL 31016600 at *1 (5th Cir. 2002); *Montana v. Commissioners Court*, 659 F.2d 19, 23 (5th Cir. Unit A 1981), *cert. denied*, 455 U.S.

---

3/ In addition, neither states, state departments, nor state officials acting in their official capacity are considered to be "persons" within the meaning of §1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 109 S.Ct. 2304 (1989); *Anderson v. Phelps*, 655 F.Supp. 560, 563-64 (M.D. La. 1985).

4/ Defendants argue that the Court lacks subject matter jurisdiction to entertain Plaintiff's §1983 claim regarding his access to the JP-5 Player because an ARP grievance pertaining to the incident was still pending at the time that Lewis drafted his complaint. (Rec. doc. 15-1, pp. 17-18). The Court notes that the exhaustion of ARP remedies requirement is not jurisdictional, *Underwood v. Wilson*, 151 F.3d 292, 294-95 (5th Cir. 1998), and "[e]xhaustion 'may be excused where dismissal would be inefficient and would not further the interest of justice or the purposes of the exhaustion requirement.'" *Demouchet v. Rayburn Corr. Center*, No. 07-CV-1694, 2009 WL 3052673 at *3 (E.D. La. Sept. 17, 2009)(quoting *Johnson v. Ford*, 261 Fed.Appx. 752, 755 (5th Cir. 2008)). In the interest of judicial economy, the Court elects to address Lewis' first claim on the merits. *Dickerson v. Strain*, No. 08-CV-4651, 2009 WL 2023866 at *3 (E.D. La. Jul. 9, 2009).

1026, 102 S.Ct. 1730 (1982). *See also Newman v. Alabama*, 559 F.2d 283, 291 (5th Cir.), *rev'd in part on other grounds sub nom. Alabama v. Pugh*, 438 U.S. 781, 98 S.Ct. 3057 (1977)(so long as the State furnishes its prisoners with reasonably adequate food, clothing, shelter, sanitation, medical care, and personal safety, that ends its Eighth Amendment obligations)).

Viewed from an equal protection perspective, Plaintiff would need to prove purposeful discrimination resulting in a discriminatory effect among persons similarly situated. *Muhammad v. Lynaugh*, 966 F.2d, 901, 903 (5th Cir. 1992). In *Muhammad*, the Fifth Circuit found that a prisoner housed in one prison unit was not "similarly situated" to a prisoner housed in another unit and because all inmates housed in the "Michael Unit" were not permitted to possess tape players, the plaintiff being no exception, there was no constitutional violation. *Id. See also Martin v. Scott*, 156 F.3d 578, 580 (5th Cir. 1988), *cert. denied*, 527 U.S. 1041, 119 S.Ct. 2405 (1999)(inmates with different housing classifications are not similarly situated); *Woods v. Collins*, 68 F.3d 471, 1995 WL 581879 at *2 (5th Cir. 1995)(similarly situated inmates are those state prisoners housed in transfer facilities, not all state prisoners regardless of where they are housed). Here, although Plaintiff complains that inmates housed in the less restrictive housing unit that he was transferred to on October 24, 2018 are allowed to possess JP-5 Players, he identifies no such inmates like himself who were assigned to Level 1 Extended Lockdown on the date that the device was received at RCC, absent which no equal protection claim is apparent. *Clark v. Foti*, 50 F.3d 1032, 1995 WL 136127 at * (5th Cir. 1995). To the extent that Plaintiff's first claim can be characterized as one for deprivation of property (*i.e.*, the JP-5 Player) by a state employee, such a deprivation, whether done negligently, *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908 (1981), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327, 330, 106 S.Ct. 662, 664 (1986),

6

or intentionally, *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3104 (1984), is not actionable under §1983 when an adequate state-law remedy exists. *Murphy v. Collins*, 26 F.3d 541, 543-44 (5th Cir. 1994); *Hines v. Booth*, 841 F.2d 623, 624 (5th Cir. 1988). Louisiana law provides such a remedy. *See* LSA-C.C. Art. 2315. As respects any untoward comments that may have been directed to Plaintiff by Deputy Warden Bickham, the law is clear that verbal abuse or threatening language of a correctional officer do not, even if true, amount to constitutional violations. *Harvey v. Stalder*, 130 Fed.Appx. 654 (5th Cir. 2005); *Wilson v. Budner*, 976 F.2d 957, 958 (5th Cir. 1992). Otherwise, Plaintiff's conclusory allegations of retaliatory mistreatment provide an insufficient basis for liability under §1983. *Irby v. Cole*, 278 Fed.Appx. 315, 316 (5th Cir. 2008).

The second incident complained of by Plaintiff begins with his being written up and adjudicated guilty of aggravated fighting in a prison disciplinary proceeding. The Court does not read Plaintiff's complaint as presenting a credible challenge to validity of the disciplinary proceeding but even if it could be, as Plaintiff does not allege that he lost any "good time" credits as a result of the adjudication in question, the sanctions to which he was subjected, which are merely changes in the conditions of his confinement, do not implicate due process concerns as they do not pose an atypical or significant hardship beyond the ordinary incidents of prison life. *Richard v. Quarterman*, No. 07-CV-2893, 2007 WL 2688442 at *2 (S.D. Tex. Sept. 10, 2007)(quoting *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997)). As a consequence of being placed in administrative segregation following the prison rule violation, Plaintiff's personal property was initially impounded but was subsequently rummaged through and partially lost and/or destroyed. While the Court certainly does not condone the Defendants' actions, if true, here again Plaintiff's remedy with respect to his lost

and/or damaged property lies in Article 2315, not §1983. *Brewster v. Dretke*, 587 F.3d 764, 768 (5th Cir. 2009), *cert. denied*, 560 U.S. 944, 130 S.Ct. 3368 (2010). That the personal property may have included eyeglasses and a knee brace, without more, does not demonstrate that prison officials were aware that their actions exposed Lewis to substantial harm or that the officials consciously disregarded that risk to the extent that such items were even medically necessary. *Id.* at 769-70 (confiscation of prisoner's spare glass eye). Similarly, to the extent that Lewis' impounded personal property may have included legal materials, he fails to show any resulting prejudice. *Id.* at 769. And again, the use of derogatory epithets, even if true, is not redressable under §1983. *Mosley v. Antoine*, 61 Fed.Appx. 919, 2003 WL 1109061 (5th Cir. 2003).

Finally, Plaintiff complains of the handling and outcome of the ARP grievance that he initiated with respect to the handling of his personal property. Inasmuch as inmates have no constitutional right to an adequate and effective grievance procedure or to have their complaints investigated and resolved to their satisfaction, no constitutional violation is apparent. *Propes v. Mays*, 169 Fed.Appx. 183, 184-85 (5th Cir. 2006); *Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005); *Tyson v. Tanner*, No. 08-CV-4599, 2009 WL 2883056 at *5 (E.D. La. Aug. 25, 2009). The Court also notes that without a showing of physical injury, of which feelings of fear and anxiety do not qualify, damages for mental or emotional suffering experienced while in custody are not recoverable under §1983. 42 U.S.C. §1997e(c); *Herman v. Holiday*, 238 F.3d 660, 665-66 (5th Cir. 2001); *Cambre v. Jefferson Parish Sheriff's Office*, No. 05-CV-6863, 2006 WL 2092403 at *4-5 (E.D. La. Jul. 25, 2006).

**RECOMMENDATION**

For the foregoing reasons it is recommended that Defendants' motion be granted and that Plaintiff's §1983 claims against them in their official capacity be dismissed without prejudice for want of jurisdiction. It is further recommended that Plaintiff's §1983 claims against the Defendants in their individual capacity be dismissed with prejudice pursuant to 28 U.S.C. §1915(e) and Rule 12(b)(6), Fed. R. Civ. P.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United States Auto. Assoc.*, 79 F.3d 1415 (5th Cir. 1996)(en banc).[5]

New Orleans, Louisiana, this  26th  day of   September  , 2019.

MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE

---

[5] *Douglass* referenced the previously-applicable 10-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. §636(b)(1) was amended to extend that period to 14 days.